**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2265**

MELVIN MURPHY,

        Plaintiff – Appellant,

    v.

CAPELLA EDUCATION COMPANY,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:13-cv-00655-CMH-TRJ)

Argued: October 29, 2014        Decided: December 5, 2014

Before NIEMEYER, WYNN, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Wynn wrote a separate opinion concurring in the result.

**ARGUED:** John Chapman Petersen, SUROVELL ISAACS PETERSEN & LEVY PLC, Fairfax, Virginia, for Appellant. Brendan David O'Toole, WILLIAMS MULLEN, Richmond, Virginia, for Appellee. **ON BRIEF:** Jason Frank Zellman, Stephen Patrick Pierce, SUROVELL ISAACS PETERSEN & LEVY PLC, Fairfax, Virginia, for Appellant. Todd R. Sorensen, CAPELLA EDUCATION COMPANY, Minneapolis, Minnesota, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Melvin Murphy ("Appellant") appeals the district court's dismissal of his amended complaint (the "Amended Complaint"), which purports to bring fraud-based claims against Appellee Capella Education Co. ("Capella"). The district court dismissed the Amended Complaint pursuant to Rule 9(b) of the Federal Rules of Civil Procedure because Appellant failed to allege fraud with sufficient particularity.

The Amended Complaint alleges that Appellant paid large sums of tuition in pursuit of a Ph.D., only to fail the comprehensive examinations, which was a required step on the path to earning a Ph.D. He does not allege with particularity that anyone at Capella assured him he would pass such examinations, that he would complete the program in a certain period of time, or that statements in the published materials sent by Capella made any such representations. He also alleges that an unspecified number of nameless individuals shared the same experience, and thus Capella is essentially a "diploma mill without the diplomas." J.A. 103 (internal quotation marks and punctuation omitted).[1] Such allegations must meet the heightened

_____

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

2

pleading standard set forth in the Federal Rules. Because Appellant fails to meet this standard, we affirm.

I.

The Amended Complaint, which we are obliged to view in the light most favorable to Appellant, see Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014), contains the following allegations.

A.

Murphy, a resident of Fairfax County, Virginia, received a bachelor's degree from American University and an M.B.A. from the University of Phoenix. He then sought to obtain a Ph.D. for purposes of his professional development in the business management field. Having seen several online advertisements for Capella's doctoral programs in business management, Appellant contacted Capella and expressed an interest. Capella "aggressively responded" to Appellant, "calling and emailing him and providing him with brochures and other marketing materials in an effort to enroll him in its doctoral program." J.A. 104.

In response to his inquiries, Capella sent two publications to Appellant: the 2008 University Guide (the "Guide") and the "What Can I Do?" Brochure (the "Brochure"). The Guide is a 40-page color booklet that, inter alia, describes the Ph.D. program in Organization and Management with a

3

specialization in Leadership (the "Leadership Ph.D."). The Guide includes the following description of the Leadership Ph.D. program:

> Enhance your ability to manage and lead in today's fast-paced, global business environment with the Leadership PhD specialization. The curriculum offers a strong foundation in key business functions, along with focused leadership courses that allow you to carve your niche in such areas as global leadership, leadership development, entrepreneurial leadership, and upper-echelon leadership. You will also conduct and apply advanced doctoral research to the actual challenges facing complex, 21st-century organizations. People who choose this specialization are often pursuing faculty positions or leadership or consulting roles in a variety of military, government, business, and nonprofit settings.

J.A. 176. The Guide also contains testimonials and photographs of individuals purporting to be Capella students. One of these purported students is Sidney Wynn, who, like Appellant, is an African-American veteran. The Guide indicates that Wynn earned a master's degree and was enrolled in the Organization and Management Ph.D. program at Capella. The statement below his picture reads, "I chose the Capella master's degree program as a way to move myself forward and provide an edge when I return to civilian life." Id. at 164.

The Brochure is a four-page brochure stating the following:

4

> The Leadership specialization prepares leaders for today's fast-paced and complex global enterprise system . . . . Executives, mid-level managers, and those in the initial stages of their careers are prepared to develop real-world answers to the challenges of the twenty-first century organization. This specialization prepares doctoral leaders to lead, consult, or teach in the area of leadership from an informed, strategic viewpoint, creating practical solutions to real-world problems.

J.A. 199. The Brochure also lists "[c]ommon job titles" for graduates of the Leadership Ph.D. program, including faculty member, dean, leadership consultant, CEO, CFO, president, and director. Id.

In addition to the Guide and the Brochure, Capella enrollment counselors also confirmed to Appellant that the Leadership Ph.D. existed, that he "would earn that degree once he had fulfilled the requisite coursework," and that "the degree would be useful in his chosen profession." J.A. 108-09.

B.

Based on the representations made in the Guide, in the Brochure, and by enrollment counselors, Appellant applied to Capella's Leadership Ph.D. program in late 2008 and enrolled in the program in 2009. From 2009 to 2011, he performed well and was very involved in school activities. He communicated with his advisor and took classes on a quarterly basis. He attended three residency programs or "colloquia," where he met other

5

Capella students. J.A. 110. Throughout the program, Appellant was "in regular contact" with his advisors about progress, course selection, and difficulties with his studies. Id. Appellant estimates he emailed and called such advisors twice a month. Appellant earned a GPA of 3.75, along with a $5,000 scholarship to apply toward his tuition. He was even selected as a "Capella Ambassador," and in that capacity he discussed the school's academic offerings with new and potential students. Id.

After finishing his course work, in the fall of 2011, Appellant took the comprehensive examinations, or "Comps," which is the last step before a Capella Ph.D. student begins to write his or her dissertation. According to the Amended Complaint, the Comps are "purportedly . . . written exam[s] which feature[] multiple essay questions in which the doctoral candidate demonstrates knowledge of the subject matter, as well as writing, research, and critical thinking proficiency." J.A. 111. If a student fails the Comps on the first try, he or she may try again, but on the second failed attempt, the student is dis-enrolled. The Comps term is treated as a course, requiring approximately $4,000 in tuition per term. Students are permitted to receive feedback during the process of writing the Comps and, in response, perform a "rewrite," but this process

6

normally lengthens the Comps process, adding more to the tuition bill.  Id. at 112-13.

Appellant's initial attempt at passing the Comps was in the fall of 2011.  As the "author of several books and multiple published articles," he "expected to pass the writing skills portion."  J.A. 112.  However, after submitting a draft for feedback, he received "arbitrary and pretextual" negative criticism, and thus exercised his option to perform a rewrite. Id.  After completing the rewrite, in December 2011, Capella informed Appellant that he failed the Comps.  He thus decided to take an intervention writing class, a remedial course that cost an additional $4,000.  He received an "A" in that class.

In the summer of 2012, Appellant once again attempted to take the Comps, paying another $4,000 to do so.  After being subject to "technical and arbitrary criticism," Appellant's essay was flagged for plagiarism, "apparently because he failed to enclose a direct quote in quotation marks."  J.A. 113.  The essay was returned to him ungraded, and he was again given the option of a rewrite.  He did so, and was later informed that he failed the Comps for a second time, meaning that he would be dis-enrolled.  After Appellant appealed his second failed attempt, Capella informed Appellant that he could take the Comps a third time if he re-enrolled in the Comps course at an additional cost of $4,000.  At this point, Appellant had spent

7

over $70,000 in tuition.  He elected not to pay the additional $4,000 "for what experience had shown him to be a fruitless endeavor."  Id. at 114.  Capella also informed him that he could use the coursework thus far completed to earn a master's degree, but only if he paid an additional $4,000 toward a capstone course.  Appellant rejected this offer because he already held a master's degree.  Appellant never received a degree from Capella.

## C.

On April 30, 2013, Appellant filed suit against Capella in the Circuit Court of Fairfax County, Virginia, alleging violation of the Virginia Consumer Protection Act (the "VCPA").  Capella removed the matter to the Eastern District of Virginia and soon thereafter filed a motion to dismiss pursuant to Rule 12(b)(6).  The district court granted the motion on July 25, 2013, explaining that the complaint did not state a VCPA violation with sufficient particularity, but giving Appellant 14 days to amend his complaint.  On August 8, 2013, Appellant filed the Amended Complaint alleging (1) violation of the VCPA; (2) fraud; and (3) constructive fraud.

In the Amended Complaint, Appellant claims he enrolled in Capella because of the "false advertising" and "false statements" made by Capella and its representatives.  J.A. 107. He avers that he contacted over 50 other Capella students,

8

"[m]ost" of whom were "pursuing a [Leadership Ph.D.] degree," and "[e]ach person" stated that he or she received similar enrollment brochures; did not know about the Comps requirement or the overall low rate of passage; enrolled, took classes, and received a high GPA without any indication or warning of deficiency; took the Comps and failed them based on "arbitrary and subjective reasons unrelated to the substance of the subject"; took remedial classes or retook the Comps and thus paid more tuition; and finally, became dis-enrolled without receiving a Ph.D. after having paid at least $60,000 in tuition. Id. at 114-15.

Appellant also alleges Capella awards a "miniscule number of doctoral degrees (less than 10% of enrolled candidates)" and awards no degrees at all in the Leadership Ph.D. program. J.A. 115. He also avers that Capella administers the Comps in such a way as to maximize its financial yield (that is, by "requiring every candidate to use at least a 'second' quarter to complete the Comps"), and uses the Comps to "systematically dismiss doctoral candidates who have otherwise completed the course work." Id. at 116; see also id. at 117 (The Comps were used "as a pretext to punitively dis-enroll students (after they spend all their available funds).").

Appellant categorizes Capella's alleged falsities as "False Statements" and "Material Omissions." The alleged False Statements are the following:

> (1) "the existence of the Leadership Ph.D. degree";
>
> (2) "the existence of successful graduates who had obtained the Leadership Ph.D. degree"; and
>
> (3) "the existence of satisfied customers like Mr. Wynn[.]"

Id. at 107. These statements were allegedly "repeated and reiterated by Capella enrollment counselors." Id. (internal quotation marks omitted). The alleged Material Omissions are the following:

> (1) "[T]here was no doctoral degree available in the [Leadership Ph.D. program] and thus no 'graduates' of that program";
>
> (2) "[S]tudents like Mr. Wynn . . . did not actually exist and/or were not enrolled in the represented programs and never made the statements attributed to them";
>
> (3) "[A] doctoral candidate in any subject must pass the [Comps] in order to be eligible for the Ph.D. and most candidates fail these exams"; and
>
> (4) "[T]he overwhelming majority of doctoral 'candidates' (at least 90%) did not actually obtain their desired degree and NO candidates in the Leadership Ph.D. program actually obtained that degree in that field."

10

Id. at 108. Appellant also alleges that no one from Capella informed him that his progress was subpar, that he was unlikely to pass the Comps, or that he would fail to complete the program for any other reason.

D.

Capella filed a motion to dismiss the Amended Complaint on August 26, 2013. On September 20, 2013, the district court ordered the case be stricken from the docket. The court entered a three-page memorandum opinion granting Capella's motion on October 4, 2013. The district court reasoned that Appellant's claims were not "supported with . . . particularity" pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, explaining, "[Appellant] rather attributes the same indefinite statements to [Capella's] various promotional materials and unidentified agents at indefinite times." Murphy v. Capella Educ. Co., No. 1:13-cv-655, 2013 WL 5525688, at *1 (E.D. Va. Oct. 4, 2013) (J.A. 259-60). Appellant timely noted this appeal.

II.

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) de novo. See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Appellant argues that the dismissal was error because the Amended Complaint satisfies the pleading standards

11

of both Rule 8(a)[2] and Rule 9(b) of the Federal Rules of Civil Procedure. We assume arguendo that the Amended Complaint is sufficiently "plausible on its face" pursuant to Rule 8(a), i.e., that Appellant "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). We thus proceed to discuss the Amended Complaint's viability pursuant to Rule 9(b). See United States ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014) (Allegations of fraud must "meet the more stringent 'particularity' requirement of Federal Rule of Civil Procedure 9(b)" in addition to the requirements of Rule 8).[3]

---

[2] Rule 8(a) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[3] Although Ahumada was a False Claims Act case, its holding -- that both Rule 8(a) and 9(b) hurdles must be jumped at the motion to dismiss stage -- applies equally to all fraud cases. See United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013) ("The multiple purposes of Rule 9(b) . . . are as applicable in cases brought under the [FCA] as they are in other fraud cases."); see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) ("[C]laims of fraud or mistake . . . must, in addition to pleading with particularity, also plead plausible allegations."); Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) ("[T]he Twombly plausibility
(Continued)

12

III.

Rule 9(b) provides, "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis supplied). We have explained that the purpose of this higher pleading standard is to "provid[e] notice to a defendant of its alleged misconduct, . . . prevent[] frivolous suits, . . . eliminat[e] fraud actions in which all the facts are learned after discovery, and . . . protect[] defendants from harm to their goodwill and reputation." United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013) (internal quotation marks omitted).

In order to satisfy Rule 9(b), a plaintiff must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Nathan, 707 F.3d at 456 (internal quotation marks omitted) (emphasis supplied). He or she must set forth "the who, what, when, where, and how of the alleged fraud" before access to the

standard applies to all civil actions[.]"); United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009) ("Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading.").

13

discovery process should be granted.  United States ex rel. Wilson v. Kellogg Brown & Root, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted).  Against this backdrop, we proceed to analyze the Amended Complaint.

A.

Alleged Fraud and Constructive Fraud

Counts Two and Three of the Amended Complaint purport to allege Virginia common law fraud and constructive fraud.  In order to succeed on such claims, a plaintiff must prove (1) false representation of a material fact; (2) made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; (3) reliance on that false representation to plaintiff's detriment; and (4) resulting damage.  Caperton v. A.T. Massey Coal Co., Inc., 740 S.E.2d 1, 9 (Va. 2013).  In the Amended Complaint, Appellant asserts that the false representation element is satisfied by the alleged False Statements and Material Omissions.[4]  Therefore, we look to each of these items to determine if a particularized fraud claim has been pleaded.

---

[4] "Virginia law recognizes that an omission may constitute a false representation in certain circumstances."  Weiss v. Cassidy Dev. Corp., No. 206766, 2003 WL 1563425 at *4 (Vir. Cir. Ct. 2003) (citing Van Deusen v. Snead, 441 S.E.2d 207, 211 (Va. 1994)).

14

1.

## False Statements

a.

The first alleged False Statement set forth in the Amended Complaint is that Capella represented that the Leadership Ph.D. degree actually "exist[ed]," when in reality the program was a "sham" and Capella was a "diploma mill without the diplomas." J.A. 107, 110, 103 (internal quotation marks and punctuation omitted). More specifically, Appellant claims that the Brochure and the Guide "consciously gave the impression that a Capella student could enroll, take the requisite classes and obtain a Ph.D. in the Leadership program." Id. at 107. This "was a false statement" because Capella "has never awarded a Leadership Ph.D. in Organization and Management and it never will, as the program itself has been discontinued." Id.

After examining the specific allegations underlying these general assertions, we conclude that Appellant has failed to plead "the who, what, when, where, and how of the alleged fraud." Wilson, 525 F.3d at 379 (internal quotation marks omitted). First, Appellant states broadly that Capella "had no track record of producing doctoral graduates," and attempts to support this claim by stating that of the 5,018 students enrolling in doctoral programs in 2008, "not a single one had earned a degree through 2010." J.A. 103. But he does not link

15

the two by alleging that any doctoral student enrolling in 2008 should have earned such a degree in two years. To the contrary, the Amended Complaint shows that Appellant himself was not eligible to take the Comps until two years after he enrolled, and one cannot write his or her dissertation and earn a degree until finishing the Comps. Nor does Appellant allege that any agent of Capella assured him he would have a degree in two years.

Second, Appellant claims, of students who enrolled in Capella seeking a doctorate degree in 2008 or 2009, "less than 10% would actually receive such a degree." J.A. 103; see also id. at 115 ("Capella awards a miniscule number of doctoral degrees . . . and it awards no Ph.D. degrees in the fraudulent 'Leadership Ph.D. program.'"). But again, Appellant does not allege that students enrolling in 2008 and 2009 should have received their degrees by the time the Amended Complaint was filed in August 2013. In fact, he appears to have relied only on his own vague investigative work. See id. at 115 n.3 ("In his investigation, Mr. Murphy has not contacted a single student in the Leadership Ph.D. program that actually obtained a Ph.D.").

Third, Appellant explains that the Comps evinced an effort to "weed out" students after "they have paid the maximum possible tuition." J.A. 115. He claims Capella administers the

16

Comps "in such a manner as to maximize its financial yield, i.e., by requiring every candidate to use at least a 'second' quarter to complete the Comps" and alleges that his failed Comps were based on "arbitrary and pretextual" criteria. Id. at 116, 112. These allegations, too, fail for lack of particularity. Appellant does not provide the specific criteria used to evaluate his Comps, does not explain how it is arbitrary, and does not provide any specific instances of anyone besides himself being "weed[ed] out" and/or having to use a second quarter to take the Comps. J.A. 115.[5] Cf. Kohler v. Hirst, 460 F. Supp. 412, 420 (E.D. Va. 1978) ("[P]laintiff has merely

---

[5] Even if Appellant did provide the criteria used for the Comps review, we are certainly not in the business of reviewing academic determinations, nor should we be. See Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225 n.11 (1985) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." (internal quotation marks omitted)); Sandlin v. Johnson, 643 F.2d 1027, 1029 (4th Cir. 1981) ("Decisions by educational authorities which turn on evaluation of the academic performance of a student as it relates to promotion are peculiarly within the expertise of educators and are particularly inappropriate for review in a judicial context."); Clark v. Whiting, 607 F.2d 634, 638 (4th Cir. 1979) (review of "denial of academic promotion premised on purely academic considerations . . . is inappropriate"); see also Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 90 (1978) ("Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.").

17

stated a conclusion; she has not alleged, even briefly, how or why defendants' conduct was arbitrary and capricious."). Although he generally refers to "over fifty other Capella students" who had a similar experience, this alone is not sufficient. J.A. 114. He does not describe the "time, place, and contents of the false representations," nor does he identify the people making such representations or the people receiving them.[6] United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010).

Finally, we cannot ignore Capella's citation to the National Center for Education Statistics ("NCES") Digest of Education Statistics, which shows that from 1999-2009, Capella awarded 3,421 doctoral degrees and was ranked 41st among the 60 institutions conferring the most doctoral degrees in the nation. See Digest of Educational Statistics, National Center for Education Statistics, http://nces.ed.gov/programs/digest/d10/tables/dt10_336.asp (last visited Nov. 14, 2014) (saved as ECF opinion attachment).[7] These statistics contradict Appellant's

---

[6] Indeed, per his own allegation, these unnamed 50 people were not all enrolled in the program about which Appellant complains. See J.A. 114 ("Most of these [50] were pursuing a doctoral degree in the [Leadership Ph.D.] program." (emphasis supplied)).

[7] We can take judicial notice of the statistics available on this website. See Fed. R. Evid. 201(c)(1) (authorizing a court to take judicial notice without a request from a party); Philips (Continued)

assertion that Capella is simply a diploma mill without the diplomas.

b.

The second alleged False Statement is based on the following allegations: the Guide featured "individuals . . . identified as . . . successful graduates of Capella," when they were not, J.A. 105; and over 50 other Capella students received enrollment brochures with people "falsely portrayed as 'successful' . . . graduates[] of the Leadership Ph.D. program, or a similar doctoral program," id. at 114-15. These allegations likewise fail to reach the level of particularity required under Rule 9(b). Except for Wynn (who was never actually portrayed as a Ph.D. "graduate" in the Guide), Appellant does not mention anyone specifically who was portrayed as a Capella graduate, let alone a Leadership Ph.D. graduate; indeed, a close review of the Guide and the Brochure demonstrates the opposite -- there are no statements or pictures of anyone purporting to be a graduate of the Leadership Ph.D. program.

---

v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record" including "publicly available statistics." (internal quotation marks and alteration omitted)).

19

Therefore, Appellant's claims relating to the second alleged False Statement also fail to allege with particularity that Capella made a false representation to Appellant.

c.

As to the third alleged False Statement, Appellant claims that enrollment counselors and the Guide portrayed certain students and graduates as "satisfied with the [Leadership Ph.D.] program," when in fact, such satisfied students did not "exist[]." J.A. 121, 107. On this point, Appellant also alleges that when Capella sent the Guide to him, Wynn was no longer a Capella student, much less pursuing the Leadership Ph.D. Further, Appellant alleges, the statement in the Guide attributable to Wynn was "fabricated," "deceptive, dishonestly [sic] and openly false." Id. at 105-06. Indeed, Appellant goes so far as to allege that Wynn was "mythical," despite the fact that he acknowledges his existence by alleging that Wynn had not been a student since 2007. Id. at 116, 106.

However, Appellant fails to describe accurately the "contents of the false representations." Nathan, 707 F.3d at 455-56 (internal quotation marks omitted). Again, the only student he mentions by name is Wynn. He claims that Wynn "endorsed Capella's academic program" and was "a current student in the Leadership Ph.D. program," both of which he claims were false. J.A. 105. However, a close examination of Wynn's quote

20

in the Guide belies these claims: Wynn's quote reads, "I chose the Capella master's degree program as a way to move myself forward and provide an edge when I return to civilian life." J.A. 164 (emphasis supplied). Thus, the endorsement was of the master's program, not the Leadership Ph.D. program. Appellant fails to allege how endorsement of the master's program served as the basis for a false representation with regard to the Ph.D. program. Furthermore, the Guide does not specify that Wynn was a current student in the Leadership Ph.D. program, as Appellant alleges; rather, it simply states that Wynn was enrolled in the Organization and Management program, of which Leadership is but one concentration.

Therefore, while the first and second alleged False Statements fail for particularity, this one fails not only for want of particularity, but also because the supporting allegations are actually belied by the attached exhibits. See Cooksey v. Futrell, 721 F.3d 226, 234 (4th Cir. 2013) (In reviewing the dismissal of a complaint, "[w]e must . . . consider documents incorporated into the complaint by reference." (internal quotation marks omitted)); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (At the motion to dismiss stage, we need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (internal quotation marks omitted)).

21

2.

Material Omissions

a.

Based on the above analysis, the first and second alleged Material Omissions -- i.e., a doctoral degree was not available in the Leadership Ph.D. program and thus there were no "graduates" of that program, and students like Wynn did not actually exist and/or were not enrolled in the represented programs and never made the statements attributable to them -- likewise do not rise to the level of particularity required under Rule 9(b) to constitute a false representation.

b.

The third alleged Material Omission -- a doctoral candidate in any subject must pass the Comps, and most candidates fail these exams -- is also not pleaded with sufficient particularity to support a claim of fraud. First, to the extent Appellant alleges he did not know that he had to pass the Comps to earn a degree, this allegation is belied by the Guide, which itself mentions the comprehensive examinations in two places. See J.A. 169 ("In [Ph.D. colloquia] Track 3, you affirm competencies, gain insight into the comprehensive examination, and focus on advanced research methods[.]" (emphasis supplied)); id. at 192 (listing tuition costs for "comprehensive examination" for Ph.D. students).

22

Second, to the extent Appellant alleges that no one told him that most candidates fail the Comps, he does not sufficiently allege that this equates to an omission or false representation of a "material fact." Caperton, 740 S.E.2d at 9. He does not specifically allege why -- even if he knew that "most candidates" fail the exams -- he would have declined to enroll. Indeed, Appellant himself states that he enrolled "with expectations" of a doctoral degree, not assurances. Id. at 112. See Supervalu, Inc. v. Johnson, 666 S.E.2d 335, 342 (Va. 2008) ("[F]raud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events.").

To the contrary, he admits that as an "author of several books and multiple published articles, [he] expected to pass the writing skills portion," and this belief was not based on a false representation or omission on the part of Capella, nor does he allege it to be. J.A. 112. Appellant alleges generally that he was doing well in his classes, keeping in touch with his advisors, and receiving no negative feedback, but again, he fails to link these facts with the third alleged Material Omission. He does not specifically allege that Capella represented that his success in the course work portion of the program would equate to success on the Comps. To the contrary, Capella actually provided a colloquia to "gain insight" into the

23

Comps, which implies that successfully finishing the course work does not ensure success on the Comps.  J.A. 169.

c.

The fourth alleged Material Omission -- i.e., the overwhelming majority of doctoral candidates (at least 90 percent) did not actually obtain their desired degree and no candidates in the Leadership Ph.D. program actually obtained that degree in that field -- also fails for particularity, based on the analysis set forth in Sections III.A.1.a-c, supra.

B.

Alleged VCPA Violations

Count One of the Amended Complaint alleges that Capella violated four subsections of the VCPA:

- Va. Code Ann. § 59.1-200(A)(5) ("Subsection 5") (prohibiting the misrepresentation that "goods or services shave certain quantities, characteristics, ingredients, uses, or benefits");

- Va. Code Ann. § 59.1-200(A)(8) ("Subsection 8") (prohibiting the advertisement of goods or services with "intent not to sell them as advertised, or with the intent not to sell at the price or upon the terms advertised");

- Va. Code Ann. § 59.1-200(A)(13) ("Subsection 13") (prohibiting the enforcement of a void or unenforceable penalty clause); and

- Va. Code Ann. § 59.1-200(A)(14) ("Subsection 14") (prohibiting the use of

24

deception, fraud, or misrepresentation in connection with a consumer transaction).

Each of these claims is premised on the alleged False Statements and Material Omissions.

By its terms, subsection 5 requires a "misrepresent[ation]," Va. Code Ann. § 59.1-200(A)(5), and as explained supra, Appellant does not allege with specificity facts that would constitute a misrepresentation. This claim fails.

As the basis for his subsection 8 claim, Appellant alleges Capella "advertised a purported doctoral program in [Leadership] and then provided a different, undisclosed program with significant additional time and costs . . . without any possibility of obtaining a degree." J.A. 119. But Appellant fails to allege with particularity what sort of program was advertised (e.g., a program that should take five years, a program in which he would pass the Comps on the first try, or a program that should cost a certain amount). Therefore, this claim fails as well.

Subsection 13 prohibits the use of a void or unenforceable penalty clause in "any contract or lease," or an attempt to collect penalties under a void or unenforceable clause. Va. Code Ann. § 59-1.200(A)(13). Appellant alleges no such contract, lease, or clause at play in this matter; rather,

25

he attempts in vain to liken the remedial coursework to an unlawful penalty clause. This claim also fails.

Finally, subsection 14 prohibits using misrepresentation, deception, or false pretense in connection with a consumer transaction. As explained above, Appellant has not made sufficiently particular allegations of such deceptive behavior. This claim likewise fails.

## C.

## Other Deficiencies

In addition to the deficiencies mentioned above, we note several discrepancies and mischaracterizations in Appellant's case, which further weaken the Amended Complaint.

- Appellant characterized the Leadership Ph.D. program as a "sham," J.A. 110, called it "fraudulent," id. at 115, and stated that Capella falsely portrayed that the program "exist[ed]" at all, id. at 116. But Appellant admits that he participated in the program for nearly three years, earning high marks and even encouraging others to enroll in Capella. See id. at 110.

- Appellant used Wynn as a central character -- indeed, the only named student -- in the Amended Complaint, but then stated at oral argument, "Mr. Wynn is a side issue." Oral Arg. at 17:07-09, Murphy v. Capella Educ. Co., No. 13-2265, (4th Cir. Oct. 29, 2014), available at http://www.ca4. uscourts.gov/oral-argument/listen-to-oral-arguments#audiocurrent.

- Appellant claims Capella falsely represented that Wynn was "satisfied with

26

the [Leadership Ph.D.] program," J.A. 121, but his quote in the Guide says no such thing, see id. at 164.

- Appellant claims the list of "common job titles" in the Brochure "confirms the actual existence of graduates who have completed the Ph.D. Leadership program and found employment," J.A. 106-07 (emphasis in original), and shows that Capella made false representations about "the future employment prospects of its 'graduates,'" id. at 116. But the Brochure says no such thing.

IV.

Appellant has not pleaded with particularity that Capella made any false representations of material facts to him, or that its conduct rises to the level of a VCPA violation. Thus, his claims fail under Rule 9(b) of the Federal Rules of Civil Procedure. The judgment of the district court is

AFFIRMED.

27

WYNN, Circuit Judge, concurring in the result:

Because some of the allegations in Plaintiff's Amended Complaint fail the test of particularity under Rule 9(b) and others are so riddled with factual holes and inconsistencies that they cannot support a plausible claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), I concur in the result reached by the majority opinion.