PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-1941, 14-3495
_____

JOHN DOE, by and through Jack Doe and Jane Doe;
JACK DOE, individually and on behalf of his son, John Doe;
JANE DOE, individually and on behalf of her son, John Doe,
*Appellants*
v.

GOVERNOR OF THE STATE OF NEW JERSEY

GARDEN STATE EQUALITY,
*Intervenor-Defendant*

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-13-cv-06629)

District Judge:  Honorable Freda L. Wolfson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 19, 2015

Before:  SMITH, VANASKIE, SLOVITER, *Circuit Judges*.

(Opinion filed: April 13, 2015)

Mary E. McAlister, Esq.
Daniel J. Schmid, Esq.
Liberty Counsel
P.O. Box 11108
Lynchburg, VA  24506

Anita L. Staver, Esq.
Mathew D. Staver, Esq.
Demetrios K. Stratis, Esq.
Liberty Counsel
P.O. Box 540774
Orlando, FL  32854

*Counsel for Appellants*

Robert T. Lougy, Esq.
Eric S. Pasternack, Esq.
Susan M. Scott, Esq.
Office of Attorney General of New Jersey
P.O. Box 112
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ  08625

*Counsel for Appellee*

Shireen A. Barday, Esq.
David S. Flugman, Esq.
Frank M. Holozubiec, Esq.
Andrew C. Orr, Esq.
Kirkland & Ellis
601 Lexington Avenue
New York, NY  10022

Andrew J. Welz, Esq.
Kirkland & Ellis
655 15th Street, N.W.
Suite 1200
Washington, DC  20005

   *Counsel for Intervenor-Defendant*

———————

OPINION OF THE COURT

———————


SLOVITER, *Circuit Judge*.

In *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014), this court rejected a challenge brought by licensed counselors in the State of New Jersey to the constitutionality of Assembly Bill A3371 ("A3371"), a New Jersey statute banning the provision of "sexual orientation change efforts" ("SOCE") counseling to minors. A similar challenge to the constitutionality of the same statute is before us again, this time by a minor seeking to undergo SOCE counseling and by his parents. As in *King*, and for the reasons that follow, we reject the present challenge and will affirm the decision of the District Court dismissing Appellants' complaint.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1291, we have jurisdiction over the final order of the District Court dated July 31, 2014 dismissing Appellants' complaint. As we recently reaffirmed, "[w]e review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014). We must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them

I.

We assume the familiarity of the parties with A3371 and our opinion in *King*.[2]  In brief, A3371 provides:

---

in the light most favorable to the nonmovant." *Id.* (internal quotation marks and citation omitted).

Appellants also filed a separate notice of appeal with respect to the District Court's March 28, 2014 letter order, which stayed the matter and administratively terminated Appellants' motion for a preliminary injunction.  The impetus behind the March 28, 2014 letter order was a pending petition for a writ of certiorari seeking Supreme Court review of *Pickup v. Brown*, 740 F.3d 1208 (9th Cir.), *cert. denied*, 134 S. Ct. 2871 (2014), a Ninth Circuit decision addressing issues similar to those raised in the instant case.  Appellees contend that the District Court's July 31, 2014 final order dismissing the complaint renders the March 28, 2014 letter order moot.  We agree.  *See Hankins v. Temple Univ.*, 829 F.2d 437, 438 n.1 (3d Cir. 1987) ("Dr. Hankins' interlocutory appeal from the denial of her motion for a preliminary injunction was rendered moot by the issuance of the district court's final order on the merits. Therefore, . . . we need not address the propriety of the district court's denial of appellant's motion for preliminary injunctive relief.").  In light of our affirmance of the final order of the District Court, we decline to address the appeal from the March 28, 2014 letter order, and we will dismiss that appeal as moot.

[2] A3371 is now codified at N.J. Stat. Ann. §§ 45:1-54, 55.  We continue to refer to the law as A3371 to be consistent with the nomenclature used in the parties' briefs and in *King*.

5

a. A person who is licensed to provide professional counseling . . . shall not engage in sexual orientation change efforts with a person under 18 years of age.

b. As used in this section, "sexual orientation change efforts" means the practice of seeking to change a person's sexual orientation, including, but not limited to, efforts to change behaviors, gender identity, or gender expressions, or to reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender; except that sexual orientation change efforts shall not include counseling for a person seeking to transition from one gender to another, or counseling that:

(1) provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and

(2) does not seek to change sexual orientation.

N.J. Stat. Ann. § 45:1-55. The New Jersey Legislature ("the Legislature") provided legislative findings regarding the potential for harm from SOCE counseling and the lack of evidence that such counseling is effective. *See* N.J. Stat. Ann. § 45:1-54. For example, the Legislature found that:

> The American Psychological Association convened a Task Force on Appropriate Therapeutic Responses to Sexual Orientation. The task force conducted a systematic review of peer-reviewed journal literature on sexual orientation change efforts, and issued a report in 2009. The task force concluded that sexual orientation change efforts can pose critical health risks to lesbian, gay, and bisexual people, including confusion, depression, guilt, helplessness, hopelessness, shame, social withdrawal, suicidality, substance abuse, stress, disappointment, self-blame, decreased self-esteem and authenticity to others, increased self-hatred, hostility and blame toward parents, feelings of anger and betrayal, loss of friends and potential romantic partners, problems in sexual and emotional intimacy, sexual dysfunction, high-risk sexual behaviors, a feeling of being dehumanized and untrue to self, a loss of faith, and a sense of having wasted time and resources[.]
> . . .

7

> The American Academy of Child and
> Adolescent Psychiatry in 2012 published
> an article in its journal, Journal of the
> American Academy of Child and
> Adolescent Psychiatry, stating:
> "Clinicians should be aware that there is
> no evidence that sexual orientation can
> be altered through therapy, and that
> attempts to do so may be harmful. There
> is no empirical evidence adult
> homosexuality can be prevented if
> gender nonconforming children are
> influenced to be more gender
> conforming. Indeed, there is no
> medically valid basis for attempting to
> prevent homosexuality, which is not an
> illness."

*Id.* The Legislature stated that "New Jersey has a compelling interest in protecting the physical and psychological well-being of minors . . . and in protecting its minors against exposure to serious harms caused by [SOCE]." *Id.*

In *King*, the plaintiff counselors challenged A3371 as unconstitutional under the First Amendment as an abridgement of their rights to free speech and the free exercise of religion. 767 F.3d at 222. As to the free speech claim, we first determined "that speech occurring as part of SOCE counseling is professional speech," and restrictions on professional speech, like those on commercial speech, are given intermediate scrutiny. *Id.* at 233-34. Thus, A3371 was "permissible only if it directly advances the State's substantial interest in protecting clients from ineffective or

8

harmful professional services, and is not more extensive than necessary to serve that interest." *Id.* at 235 (internal quotation marks and citation omitted). We rejected the plaintiff counselors' arguments that A3371 constituted content or viewpoint discrimination and was, as a result, subject to strict scrutiny. *Id.* at 236-37.

We then determined that A3371 survived intermediate scrutiny and was "a permissible prohibition of professional speech." *Id.* at 240. This was based on our finding that the State has an "unquestionably substantial" interest in protecting citizens from harmful professional practices, and that this interest is even stronger where the citizens protected are minors, "a population that is especially vulnerable to such practices." *Id.* at 237-38. We found that the State met its burden of demonstrating that SOCE counseling posed harms that were real, not merely speculative. *Id.* at 238. Specifically, we pointed to the legislative record, which revealed that various reputable scientific and professional organizations have publicly condemned the practice of SOCE counseling based on its potential to inflict harm and the lack of "credible evidence that SOCE counseling is effective." *Id.* Finally, in evaluating whether A3371 was more extensive than necessary to further the State's interest, we rejected the plaintiff counselors' argument that requiring "that minor clients give their informed consent before undergoing SOCE counseling" would serve the State's objectives just as well. *Id.* at 239-40. We noted that minors are "especially vulnerable" and that they might "feel pressured to receive SOCE counseling by their families and their communities." *Id.* at 240.

As to the plaintiff counselors' free exercise claim, we concluded that "A3371 is neutral and generally applicable, and therefore triggers only rational basis review." *Id.* at 242-43. We rejected the argument that the "individualized exemptions" for counseling contained in the statute "demonstrate that A3371 covertly targets religiously motivated conduct." *Id.* at 242. Because we had already ruled that the statute passed intermediate scrutiny, we necessarily concluded that it survived the lower rational basis review. *Id.* at 243.[3]

## II.

The instant complaint was filed against the Governor of the State of New Jersey on November 1, 2013—several months before our ruling in *King*. John Doe, a minor, and his parents, Jack and Jane Doe, (collectively "Appellants" or "the Does"), who are represented by the same attorneys who represented the plaintiff counselors in *King*, alleged in their complaint that A3371 violated their First Amendment right to receive information, their First Amendment right to the free exercise of religion, and their fundamental parental rights. In conjunction with the complaint, Appellants also filed a motion for a preliminary injunction seeking to prevent the enforcement of A3371 during the pendency of the suit.

---

[3] The complaint also alleged other constitutional claims on behalf of the counselors' minor clients, but we held that the plaintiff counselors lacked standing to assert such claims. *King*, 767 F.3d at 244.

At the time the complaint was filed, John Doe was a fifteen-year-old boy who claimed that he has struggled with "unwanted same-sex attractions" and with "confusion about [his] gender identity." App. at 221. These struggles caused suicidal thoughts, self-hatred, anxiety, and panic attacks. He and his parents aver that they all have "sincerely-held religious beliefs" that homosexuality is wrong and sinful. App. at 222, 237. John Doe began SOCE counseling in May of 2011, which he believes has helped him in that he has stopped trying to be feminine, has reduced his same-sex attractions, has an improved relationship with his father, and has rid himself of his feelings of hopelessness or thoughts of suicide. John Doe and his parents wish to continue his SOCE counseling.

On December 6, 2013, Appellees—the Governor of the State of New Jersey and Garden State Equity, who intervened under the permissive intervention rules—opposed the preliminary injunction and moved to dismiss the complaint. The District Court administratively terminated the motion for the preliminary injunction on March 28, 2014, and on July 31, 2014, a few months prior to our decision in *King*, the District Court issued a decision and order dismissing Appellants' complaint. *See Doe v. Christie*, 33 F. Supp. 3d 518 (D.N.J. 2014).

The District Court ruled that Appellants' First Amendment speech claims fail because SOCE counseling is conduct not speech and A3371 easily surpassed rational basis review. *Id.* at 524-27.[4] As to Appellants' free exercise

---

[4] The District Court had ruled similarly in *King*, and we rejected the conclusion that SOCE counseling was

11

claims, the Court, explaining that the analysis was the same whether the challenger was the client or the counselor, dismissed the Does' free exercise claim because A3371 was neutral and generally applicable. *Id.* at 527-28. Finally, the District Court also dismissed Appellants' claims that were premised on their fundamental parental rights. The Court explained that the constitutional right of parents to direct the upbringing of their children is "not without qualification." *Id.* at 528. The Court concluded that the case-law did not support Appellants' "argument that parents have an unqualified right to select medical procedures, *e.g.*, mental health treatment practices, for their children." *Id.* at 530. Appellants filed a timely appeal.

III.

For the reasons stated in our recent decision in *King*, we will affirm the dismissal of the free exercise and right to receive information claims. Appellants here raise the same challenges to A3371 as were raised by the plaintiff counselors in *King*, and after extensively considering these arguments, we upheld the constitutionality of A3371. *See* 767 F.3d at 224-40.

The only "new" argument raised by Appellants with respect to these claims is that A3371 burdens, not their right to speak, but their right to receive information. Specifically,

conduct, not speech. Nonetheless, we ultimately affirmed the District Court's dismissal of the free speech claim, albeit for other reasons—namely, that A3371 survived intermediate scrutiny that we apply to professional speech restrictions. *See King*, 767 F.3d at 224-40.

they argue that "[t]he First Amendment protects the right to receive information as a corollary of the right to speak" and that "A3371 prevents . . . minors . . . from receiving the viewpoint of SOCE counseling from a licensed professional, which may be beneficial to those who seek to reduce or eliminate their unwanted [same-sex attractions]." Appellants' Br. at 14-15.[5]

Appellants are correct that the First Amendment protects both the speaker and the recipient of information. *See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976). However, the cases interpreting the First Amendment do not contemplate that some speech may be restricted as to the speaker but not to the listener. The listener's right to receive information is reciprocal to the speaker's right to speak. *See id.*; *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) ("[T]he right to receive ideas follows ineluctably from the sender's First Amendment right to send them."). As we concluded in *King*, A3371 does not violate the counselors' right to speak, *see* 767 F.3d at 240, and, as a

---

[5] We stated in *King* that A3371 did not prevent the plaintiff counselors from expressing the viewpoint that same-sex attractions are capable of being reduced or eliminated "in the form of their personal opinion, to anyone they please, including their minor clients. What A3371 prevents Plaintiffs from doing is expressing this viewpoint in a very specific way—by actually rendering the professional services." 767 F.3d at 237. Likewise, our ruling here today will not prevent Appellants from obtaining information about SOCE despite their inability to receive SOCE counseling from licensed counselors in New Jersey.

13

result, it does not violate Appellants' right to receive information.

Appellants argue that if we were to conclude that their rights to receive information are not violated by A3371, we would be "turn[ing] the First Amendment analysis on its head" because it would mean "that Appellants have no right to receive information which the State has banned." Appellants' Reply Br. at 12. But this argument is fundamentally flawed. We are not suggesting that Appellants do not have the right to receive the information for the reason that the legislature enacted A3371, which bars the provision of SOCE counseling to minors; rather, Appellants' right to receive the information is not violated because *we already upheld* A3371, which bans the provision of SOCE counseling to minors, against a constitutional challenge in *King*.

IV.

There is one additional claim raised in this case that was not at issue in *King*. Here, Appellants claim that A3371 violates their fundamental right to direct the upbringing of their child. There is no dispute that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). But this right is not without limits, and the State may "[a]ct[] to guard the general interest in [a] youth's well being." *See Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). "[A] state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.*, 442 U.S. 584, 603 (1979). While the case law supports

14

Appellants' argument that parents have decision-making authority with regard to the provision of medical care for their children, *see e.g.*, *id.*, the case law does not support the extension of this right to a right of parents to demand that the State make available a particular form of treatment.

We agree with the reasoning of the Ninth Circuit in *Pickup v. Brown*, a case addressing a challenge to California's similar statute prohibiting SOCE counseling to minors. In *Pickup*, the Ninth Circuit referred to decisions holding that patients do not have the right to choose specific treatments for themselves and stated, "it would be odd if parents had a substantive due process right to choose specific treatments for their children—treatments that reasonably have been deemed harmful by the state—but not for themselves." 740 F.3d at 1235-36. The court concluded, "the fundamental rights of parents do not include the right to choose a specific type of provider for a specific medical or mental health treatment that the state has reasonably deemed harmful." *Id.* at 1236. We agree with this reasoning, and therefore, we will affirm the District Court's dismissal of Appellants' parental rights claims.

V.

For these reasons, we will affirm the July 31, 2014 decision and order of the District Court dismissing Appellants' complaint in its entirety.

15