**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2575
_____

M. K., by and through his Mother,
BARLOWE K. of Wilmington, Delaware,
                                            Appellant

v.

PRESTIGE ACADEMY CHARTER SCHOOL; POSITIVE CHANGE ACADEMY;
PATHWAYS OF DELAWARE; PATHWAYS; MOLINA HEALTHCARE INC
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-16-cv-00309)
District Judge: Honorable Sue L. Robinson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 7, 2018

Before: HARDIMAN, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: October 10, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

BIBAS, *Circuit Judge*.

A student entered into a settlement with one of his former charter schools. The settlement released all claims except for those "arising from" his "physical injuries." App. 85. He sued both that school and another school as well as its parent entities. But he did not serve them with the complaint until several months after he was supposed to. Based on the District Court's reading of the release, it dismissed the school with which the student had settled. And based on the untimely service, it dismissed the remaining defendants. We will affirm the dismissal for untimely service, but reverse the dismissal on the release.

## I. BACKGROUND

### A. Facts

In reviewing the District Court's dismissal, we accept as true the well-pleaded allegations in M.K.'s complaint: From 2011 through 2014, M.K. attended Prestige Academy Charter School for fifth through seventh grade. He behaved poorly. Teachers documented that he was a "CONSTANT/DAILY behavior concern." App. 24. He swore, fought, disrespected staff, defied school authority, and generally disrupted the classroom. Prestige responded by disciplining M.K. with increasing strictness. But he remained unruly.

Despite his misbehavior, Prestige never evaluated M.K. for behavioral or learning disabilities. Instead, Prestige referred him to other schools for "alternative placement." App. 25-26 (¶¶14-15). In April 2014, Prestige placed him at Positive Change Academy.

On M.K.'s first (and only) day at Positive Change, he misbehaved, so teachers put him in a timeout room. After an argument, staff "placed M.K. in an improper and dangerous physical restraint." App. 26. He was then "violently thrown to the ground and his left arm

2

was pulled back." App 26-27. He started crying and said his arm hurt. The school nurse noted that his left arm was less mobile and his left shoulder was bruised, but pronounced him uninjured.

But M.K. *was* injured. His grandmother took him to the emergency room, where an x-ray and doctor's examination found that his left arm was broken. He had surgery, followed by three months' physical therapy. And he never went back to Positive Change.

In June 2014, Prestige evaluated M.K. for behavioral and learning disabilities. It found that he was an eligible disabled student under the Individuals with Disabilities Education Act. Prestige classified him as having an "Emotional Disturbance" and found that he "requires support to manage his emotions and behaviors throughout the school day." App. 27-28. Prestige then proposed to give M.K. certain support services. But he did not return after 2014.

In late 2015, M.K. filed an administrative complaint against Prestige with the Delaware Department of Education. He sought compensatory education relief for Prestige's alleged failure to meet his educational needs between 2011 and 2014. They settled a few months later for $30,000 in educational expenses plus $15,000 in attorney's fees. In return, M.K. released "all claims against Prestige … regarding the education of [M.K.]." App. 83-84. But the settlement had a limitation on the release, excepting "any claims … arising from allegations that [M.K.] suffered physical injuries and emotional and other damages resulting therefrom while attending Prestige or Positive [Change] … , including allegations that Prestige acted wrongfully in placing [M.K.] at Positive Change." App. 84-85.

## B. Procedural History

In April 2016—three days before the statute of limitations for claims based on the broken arm would have expired—M.K. sued Prestige and Positive Change together with its parent entities. M.K. sued them under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. M.K. also claimed that the Positive Change defendants were negligent and reckless under Delaware law.

But M.K. did not serve anyone with a copy of the complaint. In fact, he did not serve anything on Positive Change, not even a waiver-of-service form. After 40 days, he finally sent Prestige's counsel a waiver form with a copy of the complaint. Neither Prestige nor its counsel ever signed or responded to that form. And M.K. did not follow up.

Months passed. Because there had been no activity on the case, the District Court ordered M.K. to submit a status report. Only then did he serve the defendants.

Unsurprisingly, the defendants moved to dismiss for untimely service and failure to state a claim. The District Court granted the motions. It dismissed M.K.'s claims against the Positive Change defendants under Federal Rules of Civil Procedure 4(m) and 12(b)(5), finding that they were not timely served. But it exercised its discretion and excused M.K.'s untimely service of Prestige, reasoning that the waiver-of-service mailing gave Prestige notice of the suit. Even so, the District Court dismissed M.K.'s claims against Prestige for failure to state a claim, holding that the settlement's release barred those claims. *See M.K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.*, 256 F. Supp. 3d 532, 536-40 (D. Del. 2017).

## II. STANDARD OF REVIEW

We review a dismissal for untimely service under Rules 4(m) and 12(b)(5) for abuse of discretion. *See Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). We review a dismissal for failure to state a claim de novo. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014). By the settlement's own terms, Delaware law governs the interpretation of the settlement agreement. App. 87. Under Delaware law, we give contract terms their ordinary meaning. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739-40 (Del. 2006).

## III. M.K. SERVED POSITIVE CHANGE TOO LATE

M.K. argues that the District Court abused its discretion by not granting him a discretionary extension of time to serve the Positive Change defendants. We find no such abuse.

A plaintiff must serve the defendants with a summons and a copy of the complaint within 90 days of filing the complaint. Fed R. Civ. P. 4(c)(1), (m). If he fails to do so, the court must dismiss the case without prejudice or order that the plaintiff serve the defendants within a specified time, absent good cause for that failure. *Id.* 4(m). Even absent good cause, the "court must *consider* whether to grant a discretionary extension." *Boley*, 123 F.3d at 758 (emphasis added).

Here, M.K. did not serve the defendants until roughly 60 days *after* his 90-day window expired. He does not claim that he had good cause for that delay, nor do we find any. He argues instead that the District Court should have granted a discretionary extension to serve the Positive Change defendants, excusing his delay as it did for Prestige.

But could is not should. Prestige had actual notice of the suit: M.K. sent Prestige a waiver-of-service request with a copy of the complaint (though he never followed up and Prestige never signed it). Because Prestige had actual notice, a discretionary extension was appropriate.

Not so with the Positive Change defendants. They had no notice because M.K. sent them nothing. That difference in circumstance amply supports the District Court's difference in treatment. Although it is unfortunate that the statute of limitations now bars M.K.'s claims against the Positive Change defendants, that is a risk of suing at the deadline and failing to timely serve the defendants. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995) ("[T]he court has discretion to dismiss the case even if the refiling of the action is barred.").

## IV. THE RELEASE DOES NOT BAR M.K.'S CLAIMS FOR HIS BROKEN ARM (INCLUD-ING WRONGFUL PLACEMENT)

That leaves only M.K.'s claims against Prestige. M.K. argues that the District Court erred by relying on the settlement's release to dismiss those claims. We agree.

To start, the release covers M.K.'s Section 504 claim. The release bars claims "regarding the education of [M.K.]" and arising from specified allegations, like the failure to "comply with any [law] relating to the identification and evaluation of [M.K.]." App. 83-84. Portions of M.K.'s Section 504 claim meet those criteria. *See* App. 28 (¶24), 32 (¶36) (referring to Section 504's requirement to "identif[y]" disabled children and alleging that

Prestige discriminated against M.K. by not "evaluating" him). If the District Court's dismissal had been limited to these particular portions of the claim, it would have been proper. M.K. filed claims against Prestige using some of the exact wording barred by the release.

But with that caveat, the settlement's limitation on the release permits all of M.K.'s remaining claims against Prestige. It carves out "any claims … under any theory or cause of action … arising from allegations that [M.K.] suffered physical injuries and emotional and other damages resulting therefrom while attending Prestige or Positive [Change] … , including allegations that Prestige acted wrongfully in placing [M.K.] at Positive Change." App. 84-85. M.K.'s remaining claims against Prestige fall within that carve-out. *See* App. 32 (¶36) (alleging that Prestige's discrimination resulted in M.K.'s broken arm), 33 (¶43) (alleging that Prestige's Section 504 and ADA violations "resulted in the injuries and damages" referenced in the complaint).

The settlement's structure buttresses our interpretation. Prestige reimbursed M.K. for educational expenses, including placement of M.K. at a school other than Positive Change, so it makes sense that M.K. waived claims for those expenses. *See* App. 85-86. And, as a public charter school, Prestige is immune from ordinary tort suits in Delaware. *See* Del. Code Ann. tit. 10, § 4011 (listing six exceptions, none of which appears to apply here); *Hughes ex rel. Hughes v. Christiana Sch. Dist.*, No. 31-2008, 950 A.2d 659 (table), 2008 WL 2083150, at *2 (Del. May 19, 2008). That explains why M.K. carved out a distinct group of federal statutory claims based on his broken arm, including claims that Prestige acted wrongfully in placing him at Positive Change. In light of Prestige's immunity, carving out only state tort claims would have made no sense.

7

Contrary to the District Court's and Prestige's reasoning, our reading does not render the release meaningless. *Prestige Acad. Charter Sch.*, 256 F. Supp. 3d at 539. Prestige argues that the exception for "any other damages" as well as "physical and emotional injuries" would swallow the entire release. Prestige Br. 10. But that ignores the structure of the key sentence in the release. Read together, the release and limitation provide that M.K. waived the claims specified in the release, *except for* claims arising from alleged "physical injuries and emotional and other damages *resulting therefrom*", i.e., from those physical injuries, including his alleged "wrongful[ ] … plac[ement] … at Positive Change." App. 85 (emphasis added).

That means that M.K. released his claims for three years of inadequate education and other disability discrimination. But he did not release his tort claims (under any statute or body of law) based on staffers' breaking his arm, including his wrongful placement at Positive Change. This interpretation gives both provisions full effect, treating the limitation as just that: a limitation on the release. Nothing is surplusage.

Because M.K.'s claims against Prestige arise from allegations that he suffered physical injuries, they survive. So we will affirm the dismissal of M.K.'s claims against the Positive Change defendants, but reverse as against Prestige. And we will remand for further proceedings.