**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-3386

SEI GLOBAL SERVICES, INC., a Delaware Corporation,

Appellant

v.

SS&C ADVENT, a Delaware Corporation; SS&C TECHNOLOGIES HOLDINGS,
INC., a Delaware Corporation.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:20-CV-01148)
District Judge: Honorable Chad F. Kenney

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 10, 2022

Before:  CHAGARES, Chief Judge, AMBRO, and FUENTES, Circuit Judges

(Opinion Filed: June 30, 2022)

———

OPINION[*]

———

**AMBRO**, <u>Circuit Judge</u>

Appellant SEI Global Services, Inc. ("SEI") claims its contractual dispute with

SS&C Advent ("Advent") and SS&C Technologies Holdings, Inc. (together with Advent,

"SS&C") over software licensing is an antitrust issue. It sued SS&C in federal court

alleging attempted monopolization in violation of Section 2 of the Sherman Antitrust Act.

It also made various contractual and tort claims under New York state law, and a stand-

alone claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. Concluding SEI

failed to plead a proper basis for its attempted monopolization claim or, alternatively, to

establish antitrust standing, the District Court dismissed that action with prejudice and the

remaining claims without prejudice. SEI appeals the antitrust decision to us.[1]

## I.

SEI provides outsourced portfolio accounting services for investment managers

and hedge funds. It has licensed portfolio accounting software from Advent since 2000.

SS&C, "a direct competitor of SEI," acquired Advent in 2015, and thus it now owns

Advent's software and controls its licensing. App. at 39. In 2019, SS&C sought to

renegotiate SEI's licensing agreement for Advent's software so that SEI would pay 40%

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] SEI does not challenge the District Court's dismissal of its New York law claims its or request for a declaratory judgment.

percent higher rates. Theretofore the licensing agreement (which predated SS&C's acquisition of Advent) had capped annual rate increases at 3%. Initially, SS&C extended SEI's licenses through January 2021 so the parties could continue negotiations. But after they broke down, SS&C terminated SEI's software license.

Shortly thereafter, SS&C discussed on an earnings call its efforts to negotiate higher prices with customers in its outsourcing business where it had not "in the past been as diligent," noting that, "thus far, [customers have] been pretty receptive to that process and it's going well." *Id*. at 54, Second Am. Compl. at ¶ 75. Advent's software "is well-regarded" by SEI's customers, many of whom "expect" SEI to use that "specific software" to manage their outsourced portfolio accounting services. *Id*. at 55, Second Am. Compl. at ¶ 78. SEI also claims Advent's software is so popular that 70% of the top 20 outsourced portfolio accounting-service providers use it for services they provide their own customers.

Believing it was left with no other recourse, SEI sued. It filed a Complaint alleging attempted monopolization in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2 (which makes it unlawful for any person to "monopolize, or attempt to monopolize, . . . any part of the trade or commerce among the several States, or with foreign nations . . . ."), five contract and tort claims under New York law,[2] and a freestanding claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. SEI then filed an Amended Complaint. After SS&C moved to dismiss it under Fed. R. Civ. P. 12(b)(6),

---

[2] Similar claims are being litigated by the parties in New York state court. *See Advent Software, Inc. v. SEI Glob. Servs. Inc.*, Index No. 655631/2020 (Sup. Ct. N.Y. Cty.).

SEI, without seeking leave of the District Court, filed a Second Amended Complaint. SS&C again moved to dismiss. Persuaded by SS&C's motion, the District Court dismissed SEI's attempted monopolization claim with prejudice, holding SEI did not plead a proper basis for that claim or establish antitrust standing. It declined to exercise jurisdiction over SEI's remaining New York law claims and dismissed those without prejudice. It likewise dismissed SEI's declaratory judgment request "for want of jurisdiction." App. at 25. SEI now appeals the dismissal with prejudice of its attempted monopolization claim.

II.

Because SEI brought an attempted monopolization claim under Section 2 of the Sherman Act, the District Court had jurisdiction under 15 U.S.C. § 4. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

We review anew (often called *de novo*) the District Court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (citations omitted). In so doing, we "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Id*. (quotations omitted). We review for abuse of discretion the District Court's denial of leave to SEI to amend its pleading, *Bechtel v. Robinson*, 886 F.2d 644, 687 (3d Cir. 1989), "and review *de novo* its determination that amendment would be futile." *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

III.

4

The District Court dismissed SEI's antitrust claim after concluding it failed to plead properly attempted monopolization and, alternatively, lacked antitrust standing because it failed to assert antitrust injury. Because we agree SEI failed to establish antitrust standing, "a threshold requirement in any antitrust case," *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 343 (3d Cir. 2018), we affirm the District Court's decision without addressing whether SEI properly pleaded attempted monopolization.

"Competition is at the heart of the antitrust laws; it is only anticompetitive conduct, or a competition-*reducing* aspect or effect of the defendant's behavior, that antitrust laws seek to curtail." *Id*. at 338 (quotations omitted) (emphasis in original). Thus "[w]hile '[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact,' courts must also consider 'whether the plaintiff is a proper party to bring a private antitrust action.'" *Id*. at 343 (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983)). We determine antitrust standing using the following multifactor test:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223, 232–33 (3d Cir. 2013). Because "antitrust injury is a necessary . . . condition" for antitrust standing, *Phila. Taxi*, 886 F.3d at 343 (quotations omitted), SEI lacks standing unless it satisfies that prong.

As the Supreme Court has explained, antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The injury "must reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010) (quoting *Brunswick Corp.*, 429 U.S. at 489). Put differently, an antitrust injury must have an "anti-competitive effect on the *competitive market*." *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001) (emphasis added). Here, SEI lacks antitrust standing because it fails to allege either (1) harm to the competitive market (as opposed to harm to SEI itself) or (2) that its harm "flows from" any supposed anticompetitive effects of SS&C's actions.

The District Court found that "SEI has not alleged any non-speculative negative impact on the outsourced portfolio accounting services consumers or competition in general." App. at 23 (citing *Phila. Taxi*, 886 F.3d at 344). Instead, SEI's allegations focus on the injuries it will suffer should it lose access to Advent's software. *See, e.g.*, App. at 42, Second Am. Compl. at ¶ 21 ("termination will cause substantial harm *to SEI's business*") (emphasis added); *Id.* at 55, Second Am. Compl. at ¶ 78 ("non-renewal or termination *will harm SEI*") (emphasis added); *Id.* at 69, Second Am. Compl. at ¶ 157 (SS&C's "conduct . . . will cause *SEI* irreparable future harm") (emphasis added). To get around this, SEI argues it, "as a competitor or rival of SS&C, falls squarely within the 'class of plaintiffs capable of satisfying the antitrust-injury requirement . . . .'" Op. Br. at 41 (quoting *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 172 (3d

6

Cir. 2015)).  But "antitrust law aims to protect competition, not competitors, [so we] must analyze the antitrust injury question from the viewpoint of the consumer." *Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (quotations omitted). Accordingly, "[a]n antitrust plaintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services, not just [its] own welfare." *Id.* (internal quotations omitted).  Thus "we will find a violation of antitrust laws only when that effect harms the market, and thereby the consumer." *Philadelphia Taxi*, 886 F.3d at 338.

SEI points to "SS&C's own statements" to show its "conduct was not directed only at SEI and that it was using its control over Advent's software to impose price increases across its entire customer base," thereby creating "potential harm to [SS&C's] customers."  Op. Br. at 44 (citing App. at 50, Second Am. Compl. at ¶ 58; *Id.* at 74, Second Am. Compl. at ¶ 173).  But taken at face value, these allegations merely suggest that SS&C planned to seek price increases without indicating whether the sought-after price increases were, or imminently will be, accomplished or whether the amount of any increases would be supracompetitive.  *See United States v. Am. Express Co.*, 838 F.3d 179, 195, 205–06 (2d Cir. 2016) (a market-wide antitrust effect can mean, among other things, "supracompetitive" prices, or "pricing . . . set above competitive levels" in the relevant market).  SEI thus "fail[s] to aver any facts suggesting that this [potential harm to SS&C's customers] is an imminent, realistic possibility." *Phila. Taxi*, 886 F.3d at 344 n.9.  Moreover, these allegations are belied by SEI's assertion that 30% of the top-20 competitors in the space do not even use Advent's software, suggesting robust competition in the relevant market that might tame any potential supracompetitive price

increases.  We thus agree with the District Court that "[a]ll SEI has shown is that it will be harmed as an individual competitor in the market by SS&C,"[3] App. at 24, rather than the competitive market in general.  The upshot: SEI has not alleged an "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp.*, 429 U.S. at 489.

Indeed, even assuming it did plead harm sufficient for antitrust standing, SEI has not alleged that harm flows from any purported anticompetitive conduct by SS&C.  As the District Court explained, SEI's assertion that "seventy percent of the top twenty outsourced portfolio accounting services providers use SS&C's software . . . demonstrates that SS&C's software is not indispensable to competing in the outsourced portfolio accounting services market."  App. at 22.  Rather, instead of pursuing alternatives to Advent's software, SEI chose to root its business model in the favorable pricing terms preserved in its longstanding licensing agreement with SS&C.  The District Court properly "inferred from the factual allegations in the Second Amended Complaint that other competitors reached different business decisions and made investments to develop their own software or otherwise access portfolio accounting software without injuring their ability to compete."[4] *Id*. at 23.  Accordingly, we agree that SEI's pleadings merely "implicate principles of contract, and are not the concern of the antitrust laws."

---

[3] SEI faults the District Court for "improperly ignor[ing] clear allegations that establish plausibly the potential that SS&C's conduct could cause marketwide harm to other participants in the relevant market and their customers."  Op. Br. at 44**.**  But as we explained, SS&C does not allege facts suggesting this harm is imminent or realistic.

[4] SEI argues that, in reaching this conclusion, the District Court impermissibly substituted its own reading and ignored other facts alleged in its Second Amended Complaint.  Not so.  The Court, rather, followed where SEI's allegations lead it.

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F. Supp. 1055, 1062 (E.D. Pa. 1996), *aff'd*, 124 F.3d 430 (3d Cir. 1997).

IV.

SEI also challenges the District Court's dismissal of its attempted monopolization claim with prejudice. A district court may deny a party the opportunity to amend its pleadings in any of the following circumstances: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[A] district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

Here, the District Court concluded further amendment to SEI's Second Amended Complaint to cure its antitrust pleading would be futile because SEI had already amended its Complaint twice (the latter amendment without leave of the Court) and failed to "set forth any reason . . . to believe that further amendment of its complaint will cure the deficiencies" identified by the Court. App. at 24. On appeal, SEI asserts it "now possesses additional facts concerning SS&C's lack of any justification for its conduct and the competitive harm it would suffer from SS&C's unwarranted conduct." Op. Br. at 45. Yet it cites only one such fact to push back against the District Court's futility ruling: a finding by the New York state court in parallel litigation that SEI would suffer irreparable harm without access to Advent's software. But such a finding has no bearing on whether

9

SEI has suffered an antitrust injury sufficient to convey antitrust standing. We therefore agree with the District Court's conclusion that further amending SEI's antitrust claim would be futile.

*   *   *   *   *

For these reasons, we affirm in full the District Court's dismissal of SEI's antitrust claim with prejudice.

10