NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3283
_____

CALISIA KELLEY; JOHNNIE MAE KELLEY, Co-Administrators of the ESTATE OF
BRUCE KELLEY JR., deceased,
Appellant

v.

BRIAN O'MALLEY, in both his Official and Individual Capacities as Sergeant for the
Allegheny County Port Authority; DOMINIC RIVOTTI, in both Official and Individual
Capacities as Officer for the Allegheny County Port Authority; JOHN DOE #1, POLICE
OFFICER, in his Official and Individual Capacities; JOHN DOE #2 POLICE OFFICER,
in both his Official and Individual Capacities; JOHN DOE #3 SUPERVISOR OF
O'MALLEY, RIVOTTI and JOHN DOE POLICE OFFICERS, in his/her Official and
Individual Capacities; ALLEGHENY COUNTY PORT AUTHORITY; MATTHEW
PORTER, in his Official and Individual Capacities as Chief of the Allegheny County Port
Authority Police; COUNTY OF ALLEGHENY; ALLEGHENY COUNTY PORT
AUTHORITY POLICE DEPARTMENT
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-01599)
District Judge: Hon. Nora B. Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2019

Before: CHAGARES, JORDAN, and RESTREPO, *Circuit Judges.*

(Filed: September 24, 2019)
_____

_____

JORDAN, *Circuit Judge*.

Calisia Kelley and Johnnie Mae Kelley, the sister and mother of Bruce Kelley, Jr. and co-administrators of his estate, appeal from the District Court's order dismissing their complaint and denying them leave to amend. For the reasons that follow, we will vacate and remand in part and affirm in part.

I.    **BACKGROUND**[1]

On a Sunday afternoon in January 2016, Bruce Kelley, Jr. was with his father in a park gazebo when two Allegheny County Port Authority police officers approached and accused the men of violating open container laws. While the officers were occupied with his father, Kelley, Jr. walked away from the gazebo. The officers called for back-up.

While walking away from the officers, Kelley, Jr. pulled out a knife, which he had on his person to protect himself because he was homeless. He did not threaten the officers with the knife or make any sudden movements. Instead, he walked away from the officers "at a slow pace[,]" passing bystanders out in their yards. (App. Vol. II at 11 ¶ 36.)

The police – totaling fourteen officers at this point – called for the Port Authority K-9 Unit. Eventually, the fourteen officers "cornered" Kelley, Jr. in front of a house,

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The following recitation is drawn from the complaint, the allegations of which we must, at this stage, accept as true. *See infra* note 2.

surrounding him with their guns drawn. (App. Vol. I at 11 ¶ 38.) The officers ordered Kelley, Jr. to drop his knife, but he refused to do so.

The K-9 Unit, consisting of Sergeant Brian O'Malley, Officer Dominic Rivotti, and a German Shepherd, arrived on the scene after Kelley, Jr. had been cornered. Sergeant O'Malley warned Kelley, Jr. that he would "sic" the German Shepherd on him if he did not drop the knife. (App. Vol. II at 11 ¶ 42.) Kelley, Jr. still refused to do so and told Sergeant O'Malley he would stab the dog if it were released on him. Sergeant O'Malley nevertheless sent the dog at Kelley, Jr., who, as promised, stabbed the dog with his knife. The K-9 Unit officers immediately opened fire on Kelley, Jr., shooting him seven times – including twice in the back – and killing him.

The Kelleys filed a complaint on Kelley, Jr.'s behalf under 42 U.S.C. § 1983, asserting claims of excessive force in violation of the Fourth Amendment and, as to certain Defendants, *Monell* liability. The District Court dismissed the complaint in its entirety with prejudice. It reasoned, as relevant here, that the K-9 Unit officers acted in an objectively reasonable manner and, therefore, they were entitled to qualified immunity. Any amendment to the complaint would be futile, the Court concluded.

The Kelleys now appeal.

## II.    DISCUSSION[2]

On appeal, the Kelleys argue that the District Court erred in dismissing the excessive force claim against Sergeant O'Malley and Officer Rivotti and in denying leave to amend the complaint.[3]

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)).  In other words, officers are not entitled to qualified immunity if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted).

The District Court concluded that the K-9 Unit officers were entitled to qualified

---

[2]  The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We review a district court's grant of a motion to dismiss de novo. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

[3] The Kelleys do not challenge the dismissal of the County of Allegheny as a defendant.  In addition, the Kelleys do not raise any argument in their opening brief as to (1) the dismissal of the Allegheny County Port Authority Police Department; (2) the dismissal of John Doe Police Officers #1 and #2; or (3) the dismissal of their *Monell* claim against Matthew Porter, John Doe #3 Supervisor, the County of Allegheny, the Allegheny County Port Authority, and the Allegheny County Port Authority Police Department.  Accordingly, any such arguments are forfeited, *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 n.7 (3d Cir. 2010), and we will affirm the District Court's decision as to those claims and parties.

immunity based on the first step of that inquiry, reasoning that the officers' actions were objectively reasonable under the circumstances and therefore did not violate Kelley, Jr.'s Fourth Amendment rights.[4]  The Kelleys contend that was error.[5]  We agree.

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011).  The use of deadly force is a seizure, and it is unreasonable "unless the officer has good reason 'to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Id.* at 183 (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)).

In *Graham v. Connor*, the Supreme Court explained that reasonableness is addressed "from the perspective of a reasonable officer on the scene" and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989).  Accepting as true the version of events as pled in the complaint, and drawing all reasonable inferences in the Kelleys' favor, a

---

[4] Because the District Court concluded that no Fourth Amendment violation had occurred, it did not reach the "clearly established" inquiry.

[5] According to the Defendants, the Kelleys failed to challenge the District Court's determination that the officers were entitled to qualified immunity because the briefing focuses only on whether the Defendants violated Kelley, Jr.'s Fourth Amendment rights. That contention misses the mark, however, given that the District Court's qualified immunity determination was based entirely on its conclusion that no constitutional violation occurred.

reasonable jury could conclude that Sergeant O'Malley's and Officer Rivotti's actions were not objectively reasonable. A review of the factors laid out in *Graham* shows why.

First, Kelley, Jr. was approached by Port Authority Officers over a minor, non-violent infraction – an open container violation, which Kelley, Jr., denies occurred . Second, at the time of the shooting, he posed little immediate threat to the safety of the officers or anyone else. When the K-9 Unit arrived, Kelley, Jr. was already facing fourteen Port Authority officers, all with their guns drawn, and was cornered in front of a house. The K-9 Unit added two more officers with guns and a trained attack dog. Granted, Kelley, Jr. was in possession of a knife and refused to put it down, but there are no allegations that he raised the knife, pointed it towards any officer or other person, or threatened any person with it. Moreover, although he stabbed the dog that attacked him – as he warned officers he would – that alone does not show that he posed a threat to the life and safety of the officers or other people when he was shot.[6]

The third *Graham* factor, whether Kelley, Jr. was actively resisting arrest or attempting to evade arrest by flight, is more complicated. It is true that he refused to comply with the officers' orders to drop his knife and that he stabbed the K-9 Unit dog. But, at the time of the shooting, Kelley, Jr. was also incapable of fleeing from the police or escaping ultimate capture, cornered as he was, and his use of the knife was in response to the German Shepherd's attack on him.

---

[6] While none of the parties demeans the life of the police dog, neither does anyone argue that the dog has the same status as, or should be treated as if it were, a human police officer for purposes of assessing the propriety of deploying deadly force.

Critically here, there are fact questions about why the officers did not attempt to use alternative, less lethal means of force before gun fire erupted. As alleged in the complaint, when the K-9 Unit officers arrived, a sizable force of Port Authority officers had effectively surrounded Kelley, Jr. in front of a house. He prolonged the standoff and, no doubt, frustrated the police by refusing to put down his knife. Sergeant O'Malley, however, without attempting to deescalate the situation, heightened tensions by threatening to have the German Shepherd attack Kelley, Jr. The response was Kelley, Jr.'s promise to stab the dog if it attacked him. Sergeant O'Malley unleashed the dog anyway. When events unfolded exactly as Kelley, Jr. said, Sergeant O'Malley and Officer Rivotti shot him seven times, without hesitation, twice in the back.

That course of conduct is one that a rational jury could conclude was beyond the bounds of reason. A jury could properly say, on these facts, that it was not at all reasonable for officers to shoot someone who they have cornered and set an attack dog on, when that person poses little threat to anyone, is vastly outnumbered by armed officers, and is only defensively wielding a knife. In sum, the Kelleys have alleged sufficient facts for a reasonable jury to conclude that Sergeant O'Malley's and Officer Rivotti's actions were objectively unreasonable. *Cf. Glenn v. Washington County*, 673 F.3d 864, 870-79 (9th Cir. 2011) (concluding that factual disputes precluded the entry of summary judgment on qualified immunity grounds, where police officers shot a man who refused to put down his knife and "stood in the driveway several feet from the officers[,]" had not committed a severe, if any, crime, did not attack officers or anyone else, and alternative, less intrusive means of force might have been used).

7

The Defendants try to fend off that conclusion by saying that *Kisela v. Hughes*, which "guided" the District Court's analysis (App. Vol. I at 14), forecloses the Kelleys' excessive force claim. We disagree. In *Kisela*, which came before the Supreme Court after summary judgment, the police were called to investigate "a woman [who] was hacking a tree with a kitchen knife." 138 S. Ct. at 1151. The police ultimately shot the woman through a chain-link fence. *Id.* At the time of the shooting, the woman "was holding a large kitchen knife, had taken steps toward another woman standing nearby, and had refused to drop the knife after at least two commands to do so." *Id.* at 1150. Here, however, there are no allegations that Kelley, Jr. moved in a threatening manner towards the officers or anyone else, nor that the officers were separated from, and thus unable to reach, Kelley, Jr. because of a chain-link fence. Apart from those important factual differences, in *Kisela*, the Supreme Court did not conclude that the officer's actions were reasonable. *See id.* at 1152 ("Here, the Court need not, and does not, decide whether Kisela violated the Fourth Amendment when he used deadly force against [the woman]."). Instead, the case turned on whether the officer's actions violated the plaintiff's rights under clearly established law. *Id.* at 1152-54. *Kisela* certainly does not foreclose the argument that the K-9 Unit officers in this case violated Kelley, Jr.'s constitutional right to be free from excessive force.

Accordingly, the District Court erred in dismissing the Kelleys' excessive force claim against Sergeant O'Malley and Officer Rivotti on the ground that, as a matter of law, the officers actions were objectively reasonable.[7]

## III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's order dismissing the complaint, insofar as the order applies to Sergeant O'Malley and Officer Rivotti, and will remand for further proceedings as to the excessive force claim against those defendants. We will affirm the dismissal of the County of Allegheny, the Allegheny County Port Authority Police Department, and John Doe Police Officers #1 and #2 as defendants, as well as the dismissal of Count II of the complaint.

---

[7] In light of our conclusion here, we need not address the Kelleys' alternative argument that the District Court erred in denying leave to amend the complaint. Moreover, arguments abandoned in the course of this appeal, *see supra* note 3, cannot be recovered through amendments to the complaint after remand. *See United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) ("[P]arties cannot use the accident of remand as an opportunity to reopen waived issues.").

We also express no view on the question of whether the officers' actions violated Kelley, Jr.'s Fourth Amendment rights under clearly established federal law at the time of the shooting. The District Court did not address that question in the first instance, nor has it been meaningfully addressed by the parties on appeal.